UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMPOWER OVERSIGHT WHISTLEBLOWERS & RESEARCH, 601 King St., Suite 200 Alexandria, VA 22313<br><br>*Plaintiff,*<br><br>v.<br><br>U.S. SECURITIES AND EXCHANGE COMMISSION, 100 F St., NE Washington, DC 20549<br><br>*Defendant.* | Civil Action No.: 23-1335 |

# COMPLAINT

1. Plaintiff Empower Oversight Whistleblowers & Research (hereinafter, "Empower Oversight") brings this action against Defendant U.S. Securities and Exchange Commission ("SEC") to compel compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

2. The records Empower Oversight seeks concern potential conflicts of interest by former high-level officials at the SEC relating to cryptocurrencies. In particular, the requested records will shine light on whether former SEC officials had conflicts of interest when declaring whether certain cryptocurrencies constitute securities, and thus are subject to SEC regulation.

3. For example, former-Simpson Thacher partner William Hinman worked as the Director of the SEC's Division of Corporate Finance from May 2017 to

December 2020. *See William Hinman Named Director of Division of Corporation Finance*, SEC (May 9, 2017), https://tinyurl.com/y4bkd8zy. Hinman reportedly continued to receive millions of dollars from Simpson Thacher while working at the SEC. *See, e.g.*, Jack Newsham, *A top SEC official was receiving a $1.6 million law-firm pension from Simpson Thacher that was 7 times his government salary*, BUS. INSIDER (Jan. 29, 2021), https://tinyurl.com/yaak4f4p.

4. While Mr. Hinman was working at the SEC,[1] Simpson Thacher was a member of the Enterprise Ethereum Alliance, an industry organization aiming to "drive the use of Enterprise Ethereum." *About*, ENTER. ETHEREUM ALL., https://tinyurl.com/fbnc9py2. In a June 2018 speech in his official capacity as an SEC official, Mr. Hinman declared that the Ethereum cryptocurrency, Ether, was not a security. *See* Speech, *Digital Asset Transactions: When Howey Met Gary (Plastic)*, SEC (June 14, 2018), https://tinyurl.com/yp7ucdff. After his declaration, Ether's value rose significantly. *See* Paul Vigna, *Crypto Market Rallies on SEC Official's Ether Stance*, WALL ST. J. (June 14, 2018), https://tinyurl.com/2s3zuzbc. After departing the SEC in late 2020, Hinman rejoined Simpson Thacher as a partner. *See Former SEC Division of Corporation Finance Director Bill Hinman Returns to Simpson Thacher*, SIMPSON THACHER & BARTLETT LLP (Jan. 12, 2021), https://tinyurl.com/mp2fe6se.

---

[1] Mr. Huber (@Leerzeit), TWITTER (Jul. 26, 2022, 9:23 AM), https://twitter.com/Leerzeit/status/1551936271068561409/photo/1 (last visited May 2, 2023) ("BOMBSHELL! 💥 Simpson Thacher left the Enterprise Ethereum Alliance sometime between May 2022 and today and is now no longer a member of the EEA!").

5. That same month, the SEC filed a lawsuit against one of Ethereum's rivals, Ripple, alleging that its XRP cryptocurrency was a security, such that the offering and sales of XRP violated federal securities law. Press Release, *SEC Charges Ripple and Two Executives with Conducting $1.3 Billion Unregistered Securities Offering*, SEC (Dec. 22, 2020), https://tinyurl.com/yw95vk99. The value of XRP fell 25% immediately after the SEC's announcement of the lawsuit. *See* Bilal Jafar, *XRP Plummets 25% after SEC's $1.3 Billion Lawsuit against Ripple*, FINANCE MAGNATES (Dec. 23, 2020), https://tinyurl.com/4tfvudjb. Shortly after filing the lawsuit, the leader of the SEC Enforcement Division, Marc Berger, left the SEC and joined Hinman as a partner at Simpson Thacher. Matt Robinson, *Ex-Acting Head of SEC Enforcement Will Join Simpson Thacher*, BLOOMBERG LAW (Apr. 15, 2021) https://tinyurl.com/3ks2yjk8.

6. As another example, former SEC Chairman Jay Clayton publicly stated while at the SEC that Bitcoin was not a security. Rakesh Sharma, *SEC Chair Says Bitcoin Is Not A Security*, INVESTOPEDIA (June 25, 2018), https://tinyurl.com/8zh8er3v. Thereafter, the value of Bitcoin significantly rose. Olga Kharif & Eric Lam, *Cryptocurrency Rally Builds Steam as Bitcoin Surpasses $7,500*, BLOOMBERG (July 17, 2018), https://tinyurl.com/2hz2sbwv. Shortly after leaving the SEC, Clayton joined One River Asset Management, a cryptocurrency hedge fund that focuses exclusively on Bitcoin and Ether. Emily Graffeo, *Former SEC chair Jay Clayton will advise digital asset hedge fund One River on crypto*, MARKETS INSIDER (Mar. 29, 2021), https://tinyurl.com/bdf39p8k.

7. These events raise serious questions about potential conflicts of interest at the root of the government's regulation of the emerging cryptocurrency market. The public deserves to know whether the government's regulation is tainted by such conflicts. Accordingly, Empower Oversight filed the FOIA Requests described herein to obtain records that will inform the public about the existence of potential conflicts of interest.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331. Additionally, it may grant declaratory relief pursuant to 28 U.S.C. § 2201, *et seq*.

9. Venue is proper in this District pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

10. Plaintiff Empower Oversight is a nonprofit, nonpartisan educational organization dedicated to enhancing independent oversight of government and corporate wrongdoing. Empower Oversight works to help insiders safely and legally report waste, fraud, abuse, corruption, and misconduct to the proper authorities, as well as work to hold authorities accountable to act on such reports. Empower Oversight has its principal place of business located in Alexandria, Virginia, and it submitted the FOIA Requests described herein to the SEC.

11. The SEC is an agency of the federal government within the meaning of 5 U.S.C. § 552(f), and it has possession and control of the records Empower Oversight seeks.

**BACKGROUND**

12. To better understand whether the SEC's recent actions toward the cryptocurrency market were affected by conflicts of interest, Empower Oversight submitted several FOIA requests to the SEC. At issue in this litigation are two such requests. First, on January 28, 2022, Empower Oversight submitted a FOIA request seeking the processing notes from the SEC's processing of an earlier FOIA request that Empower Oversight submitted. *See* Ex. A ("Processing Notes Request"). Second, on December 15, 2022, Empower Oversight submitted a FOIA request seeking various documents and communications regarding potential conflicts of interest related to the SEC's cryptocurrency enforcement decisions. *See* Ex. B ("Crypto Enforcement Request"). In both instances, the SEC failed to comply with its statutory obligations to locate and release all responsive, non-exempt records.

13. Each of these requests arises in part out of an earlier FOIA request Empower Oversight submitted to the SEC. That request is already the subject of a lawsuit in the Eastern District of Virginia. *See Empower Oversight v. SEC*, No. 23-cv-0095 (E.D. Va.). Specifically, on August 12, 2021, Empower Oversight submitted a FOIA request to the SEC seeking eight categories of records relating to potential conflicts of interest at the SEC. *See* Ex. C ("August 2021 Request"). In a series of letters dated August 13, 2021, the SEC acknowledged receipt of this request, and

assigned unique tracking numbers to each of the eight parts of the August 2021 Request.

14. On December 8, 2021, after receiving no further response from the SEC, Empower Oversight filed a complaint in the Eastern District of Virginia. *See* Compl., *Empower Oversight*, No. 23-cv-0095 (E.D. Va. Dec. 8, 2021) (ECF No. 1).

15. On December 10, 2021, the SEC issued a "no records" response to the first and second items in the August 2021 Request.

16. On December 21, 2021, the SEC issued a "no records" response to the seventh item in the August 2021 Request. That response was virtually identical to the SEC's December 10 "no records" response.

17. On January 5, 2022, the SEC issued a "no records" response to the fifth item in the August 2021 Request. Once again, that response was virtually identical to the SEC's December 10 "no records" response.

18. On January 19, 2022, Empower Oversight submitted an administrative appeal of these "no records" responses.

19. Shortly thereafter, on January 28, 2022, Empower Oversight participated in a call with SEC counsel and the Assistant United States Attorney responsible for the litigation in the Eastern District of Virginia, where the SEC informed Empower Oversight that it had identified errors in its searches. The SEC further explained that it had corrected those errors and located 1,000 pages of records thus far.

20. In that discussion, Empower Oversight requested information about the specific search terms the SEC used to identify communications with Simpson Thacher, Enterprise Ethereum Alliance, and One River Asset Management—each of which was identified in the August 2021 Request.

21. In response, the SEC stated that it had only searched for emails with the domain names @stblaw.com, @entethalliance.org, or @oneriveram.com.

22. Empower Oversight pointed out to the SEC that the August 2021 Request extended beyond emails to include calendars and notes, and also beyond emails from those specific domain names to include individuals associated with each of the identified entities.

23. After the SEC refused to conduct any such searches, stating that it could not know the names of personnel from those entities, the SEC asked Empower Oversight for a list of names to use when conducting searches, which Empower Oversight provided on February 18, 2022.

24. Yet, despite having solicited the names from Empower Oversight, the SEC then refused to search for the names, suggesting that the scope of Empower Oversight's August 2021 Request did not encompass searches for those names.

25. As the SEC's about-face raised serious questions about whether it was acting in good faith when conferring with Empower Oversight about the August 2021 Request, Empower Oversight submitted two new FOIA requests to address these issues, and to finally uncover the requested records reflecting potential conflicts of interest at the SEC.

### A.     Processing Notes Request

26.    On January 28, 2022, Empower Oversight submitted the Processing Notes Request to the SEC.  *See* Ex. A.  This Request sought the SEC's FOIA processing notes for each part of the August 2021 Request where the SEC issued a "no records" response.  *See id.* at 3.  This Request had a total of three subparts, and it also requested a fee waiver because Empower Oversight qualifies as a member of the news media, and because the requested records are in the public interest.  *See id.* at 3, 5.

27.    As Empower Oversight explained, "processing notes" means "all records created by the SEC's FOIA Research Specialists and other personnel that reflect[] the record systems and information platform that were searched, and the search terms used, to respond to" the August 2021 Request.  *Id.*

28.    On January 31, 2022, the SEC issued three separate acknowledgements of receipt of the Processing Notes Request, assigning separate tracking numbers for each subpart of the Request—No. 22-01118-FOIA; No. 22-01119-FOIA; No. 22-01120-FOIA.  *See* Ex. D.

29.    On February 1, 2022, the SEC issued its response to Empower Oversight's fee waiver request, stating that the request was "moot because as a 'Media-Use' requester you are not charged for search and review time[.]"  Ex. E at 1.  Additionally, because the SEC would provide the records electronically, there would be no duplication charges.  *See id.*

30. On February 17, 2022, the SEC sent Empower Oversight a letter stating that it would be unable to comply with FOIA's twenty-day response deadline because of unusual circumstances. *See* Ex. F.

31. On May 20, 2022, the SEC issued a partial response to the Processing Notes Request, releasing 233 pages of records with portions withheld pursuant to FOIA Exemptions 5 and 6. *See* Ex. G at 1–2. In that response, the SEC also informed Empower Oversight that it may submit an administrative appeal challenging this response. *See id.* at 2.

32. Thus, on August 15, 2022, Empower Oversight submitted an administrative appeal of the SEC's May 20, 2022 response. *See* Ex. H. Through that appeal, Empower Oversight demonstrated that the SEC had, once again, failed to conduct a search reasonably calculated to locate responsive records. *See id.* at 3.

33. On August 15, 2022, the SEC issued a letter acknowledging receipt of the appeal and assigning its tracking number 22-00516-APPS. *See* Ex. I.

34. On September 9, 2022, the SEC issued its decision on Empower Oversight's appeal, stating that "[o]n its face, it appears that the search methods used to search for responsive records were appropriate." Ex. J. at 2. But, the SEC conceded, Empower Oversight had "identified records that indicated other responsive records exist." *Id.* Thus, the Processing Notes Request was sent back to "the FOIA Office" for it to "complete[] [its] production of documents." *Id.* In that response, the SEC also informed Empower Oversight of its right to challenge this decision by filing a complaint in this Court. *See id.*

35. In the nearly eight months since, Empower Oversight has not received any further communications or records from the SEC in response to the Processing Notes Request.

36. By failing to respond to this Request, the SEC is depriving Empower Oversight and the public of vital information needed to assess whether the SEC's recent actions regarding the cryptocurrency market were affected by conflicts of interest.

### B. Crypto Enforcement Request

37. On December 15, 2022, Empower Oversight submitted a FOIA request to the SEC seeking various records regarding potential conflicts of interest related to the SEC's cryptocurrency enforcement decisions. *See* Ex. B.

38. In particular, this Request sought all records of communications between SEC officials and the various individuals Empower Oversight had previously identified for the SEC when discussing the August 2021 Request. As the SEC refused to search for communications involving those individuals, Empower Oversight was forced to submit a new request that expressly identified these individuals and requested their communications with SEC officials.

39. On December 19, 2022, the SEC issued three letters acknowledging receipt of the Crypto Enforcement Request and assigning separate tracking numbers to each subpart of the request—No. 23-00588-FOIA; No. 23-00589-FOIA; 23-00590-FOIA. *See* Ex. K.

40. On December 21, 2022, the SEC sent Empower Oversight a letter stating that it would be unable to comply with FOIA's twenty-day response deadline because of unusual circumstances. *See* Ex. L.

41. Since then, Empower Oversight has not received any further communications or records from the SEC in response to the Crypto Enforcement Request.

42. By failing to respond to this Request, the SEC is depriving Empower Oversight and the public of vital information needed to assess whether the SEC's recent actions regarding the cryptocurrency market were affected by conflicts of interest.

## COUNT I
### Violation of FOIA, 5 U.S.C. § 552
### Processing Notes Request

43. Plaintiff repeats the foregoing paragraphs as if set forth fully herein.

44. The SEC is an agency of the federal government within the meaning of 5 U.S.C. § 552(f).

45. By letter dated January 28, 2022, Empower Oversight submitted the Processing Notes Request to the SEC.

46. This Request reasonably described all requested records and complied with all applicable statutes and regulations.

47. The SEC has failed to respond to that Request by conducting a search reasonably calculated to locate responsive records, as FOIA requires. *See Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

48. And the requested records are not exempt from FOIA pursuant to 5 U.S.C. § 552(b).

49. The SEC has also failed to respond to Empower Oversight's request within the statutory time period. *See* 5 U.S.C. § 552(a)(6).

50. Accordingly, Empower Oversight has exhausted its administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C).

51. By failing to release all responsive, non-exempt records, the SEC has violated FOIA. *See* 5 U.S.C. § 552(a)(3)(A).

## COUNT II
## Violation of FOIA, 5 U.S.C. § 552
## Crypto Enforcement Request

52. Plaintiff repeats the foregoing paragraphs as if set forth fully herein.

53. The SEC is an agency of the federal government within the meaning of 5 U.S.C. § 552(f).

54. By letter dated December 15, 2022, Empower Oversight submitted the Crypto Enforcement Request to the SEC.

55. This Request reasonably described all requested records and complied with all applicable statutes and regulations.

56. The SEC has failed to respond to that Request by conducting a search reasonably calculated to locate responsive records, as FOIA requires. *See Weisberg*, 705 F.2d at 1351.

57. The requested records are not exempt from FOIA pursuant to 5 U.S.C. § 552(b).

58. The SEC has failed to respond to Empower Oversight's request within the statutory time period. *See* 5 U.S.C. § 552(a)(6).

59. Accordingly, Empower Oversight has exhausted its administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C).

60. By failing to release all responsive, non-exempt records, the SEC has violated FOIA. *See* 5 U.S.C. § 552(a)(3)(A).

## PRAYER FOR RELIEF

WHEREFORE, Empower Oversight respectfully requests that this Court:

i. Declare that the records sought by the Requests, as described in the foregoing paragraphs, must be disclosed pursuant to 5 U.S.C. § 552.

ii. Order the SEC to conduct legally sufficient searches immediately for all records responsive to Empower Oversight's FOIA Requests and demonstrate that the search methods were reasonably likely to lead to the discovery of responsive records.

iii. Order the SEC to produce by a date certain all non-exempt records responsive to Empower Oversight's FOIA Requests.

iv. Award Empower Oversight attorneys' fees and costs incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E).

v. Grant Empower Oversight such other and further relief as this Court deems proper.

May 11, 2023                                       Respectfully submitted,

                                                   */s/ Brian J. Field*
                                                   BRIAN J. FIELD
                                                   D.C. Bar No. 985577
                                                   SCHAERR | JAFFE LLP
                                                   1717 K Street NW
                                                   Suite 900
                                                   Washington, DC 20006
                                                   Tel.: (202) 787-1060
                                                   E-mail: bfield@schaerr-jaffe.com

                                                   *Counsel for Plaintiff*